# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| M&P COLLECTIONS, INC. ET AL., | ) | CHAPTER 11 |
| | ) | CASE NO. 19-30311 |
| | ) | (JOINTLY ADMINISTERED) |
| Debtors | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This case comes before the Court on the Application to Authorize Debtors to Employ Attorneys *Nunc Pro Tunc* (the "Application") filed by M&P Collections, Inc. ("M&P") and F&M Law Firm, P.S.C. d/b/a Fenton Law Firm, PSC ("F&M" and together with M&P referred to herein as "Debtors"). In the Application, the Debtors seek to employ Kaplan Johnson Abate & Bird, LLP ("KJAB") as counsel for the debtors-in-possession. The United States Trustee ("UST") objected to the Application. As discussed below, the Court concludes that KJAB does not possess an actual conflict of interest at this time and that the Application should be approved.

The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

## FINDINGS OF FACT

On February 1, 2019, the Debtors filed for Chapter 11 bankruptcy relief in the Western District of Kentucky. The Debtors are engaged in the business of consumer debt collection. Creditors would contract with F&M to collect a debt. F&M and M&P have a Services Agreement dated July 1, 2014, pursuant to which M&P leased all of its employees to F&M.

With the petition, the Debtors also filed a Motion for Joint Administration, which this Court

granted by order entered February 5, 2019.[1] That order did not consolidate the cases, and, to date, these cases have not been substantively consolidated.

On February 15, 2019, the Debtors filed the Application currently before the Court. In the Application, KJAB stated that its employment is necessary, and in the best interests of the bankruptcy estate. KJAB also stated that it: a.) has no connection with Debtor, its creditors or other parties in interest in this case, other than as disclosed herein; b.) does not hold or represent any interest adverse to the Debtor's estate in the matters upon which the firm is to be engaged; and c.) is a "disinterested person" as defined by § 101(14) of the Bankruptcy Code. KJAB sought approval *nunc pro tunc* back to February 1, 2019, the bankruptcy petitions filing date.

According to the Engagement Contract attached to the Application, M&P agreed to pay an advance retainer of $25,000.00. The F&M Engagement Contract stated that it agreed to pay an advance retainer of $10,000.00. In the Affidavit of Charity Bird, an attorney with KJAB, however, Ms. Bird stated that KJAB received from M&P a retainer in the sum of $35,000.00. Of that sum, $25,000.00 was intended to be used to fund a retainer for M&P, with the remaining $10,000.00 to be used to fund a retainer for F&M.[2]

As stated above, the UST objected to the application. In its objection, the UST noted that F&M listed M&P as a creditor in their schedules with the debt being $1,148,563.00. The validity of this debt is not in dispute. The UST argues that because M&P is a creditor of F&M, the

---

[1] The Court entered a Corrected Order on April 25, 2019, to correct an administrative error as the first page of the original order was missing.

[2] At the hearing on the Application held on April 24, 2019, counsel for KJAB did not disagree or otherwise dispute the UST's assertion that M&P paid the retainers for both M&P and F&M, notwithstanding the language in the Engagement Contracts.

representation of both debtors would create an actual conflict of interest for KJAB.  The UST also argues that "[s]ince there is a likelihood that there will be funds in one or both cases, a claim may be made on either estate."  The UST also questioned which Debtor has the allegiance of KJAB in light of the fact that M&P paid the whole $35,000.00 retainer, including the $10,000.00 portion attributed to F&M.  The UST cites *In re WM Distribution Inc.*, 571 B.R. 866 (Bankr. D.N.M. 2017) in support of his argument.

In *WM Distribution*, a cigarette distributor, was owned 90% by a wife, who was also president, and another debtor, STM, also a cigarette distributor in the same territory, was 90% owned by a husband, who was also president.  *Id.* at 868.  The companies were not jointly administered.  *Id.* at 869.  The debtors were both managed by the couple's daughter, who was 10% owner and vice president of both debtors.  *Id.* at 868.  The husband and wife were divorcing at the time of the Chapter 11.  Husband, as 90% owner of STM, was attempting to terminate daughter's authority over STM and fire the attorney acting for both debtors.  *Id.* at 870.  The court had entered a preliminary injunction in an adversary proceeding brought by STM to prohibit husband from exercising control. *Id.*  STM was over 50% of WM Distribution's unsecured creditors, and therefore would control the plan.  *Id.* at 873.

Due to this conflict, the UST objected to the dual representation of these two debtors.  The bankruptcy court agreed with the UST, finding an actual conflict of interest, and the application to employ in that case was denied.

## CONCLUSIONS OF LAW

Based on the record of this case, the Court does not believe that, at this time, KJAB holds an actual conflict of interest justifying denial of the Application.

KJAB seeks approval of its employment as the Debtors' general bankruptcy counsel pursuant to 11 U.S.C. §§ 327(a) and 1107. Section 327(a) provides, in part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Section 1107(a) of the Bankruptcy Code provides as follows:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a)

Generally speaking, under § 327, a debtor-in-possession's (or trustee's) choice of counsel is subject to the evaluation and approval of the bankruptcy court. *See In re Vouzianas*, 259 F.3d 103, 107–08 (2d Cir. 2001). In exercising its approval function, however, the bankruptcy court should interfere with the debtor-in-possession's choice of counsel only in the rarest cases, such as when the proposed attorney has an actual conflict of interest, or when it is clear that the bankruptcy estate would not be served by the debtor-in-possession's choice. *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007) (internal quotation marks and text modification omitted). This is not one of those rare cases.

Under § 327, proposed counsel must satisfy two requirements: 1) counsel must not hold or represent an interest adverse to the estate; and 2) counsel must be disinterested. The employed

4

professional must meet both standards. *Michel v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 999 F.2d 969, 971 (6th Cir. 1993); *In re Horvath*, 2017 WL 1017727, at 12 (Bankr. N.D. Ohio 2017).

> Subsection (c) of § 327 clarifies that, in a chapter 11 case,
>
>> a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c) (emphasis added).

Thus, where the only grounds another creditor or the United States trustee raises as an objection to the proposed employment is counsel's employment by or representation of a creditor, the Court may nevertheless approve the application for employment, provided such counsel does not have an actual conflict. *See In re Interwest Bus. Equipment, Inc.*, 23 F.3d 311, 316 (10th Cir. 1994).

The Bankruptcy Code does not define the term "actual conflict," but courts have generally applied a factual analysis to determine whether an actual conflict of interest exists. *In re Bullitt Utilities, Inc.*, 558 B.R. 181, 184 (Bankr. W.D. Ky. 2016). The court in *In re Midway Motor Sales*, 355 B.R. 26 (Bankr. N.D. Ohio 2006), stated that an interest adverse to the estate pursuant to § 327(a) is the same as an actual conflict of interest pursuant to § 327(c). The *Midway Motor Sales* analysis was as follows:

> An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.' *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd in pertinent part*, 119 B.R. 35 (D.N.J. 1990).

*Id.* at 33. "Courts have been accorded considerable latitude in using their judgment and discretion

5

in determining whether an actual conflict exists in light of the particular facts of each case." *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991).

In this case, despite the UST using language in its objection that this issue requires a case-by case determination, the UST would have the Court adopt a bright line rule, wherein in any case or cases with multiple debtors dual representation would be prohibited if one debtor owed another debtor any sum of money.  In the UST's mind, the simple fact that a debtor owes another debtor is an automatic disqualifying actual conflict of interest.

This Court does not agree with such a bright line rule.  This Court is more inclined to go along with the line of cases that hold that § 327 does not require automatic disqualification of attorneys that represent debtors with claims against each other.  "[T]he presence of intercompany claims between debtors represented by the same counsel does not automatically warrant the disqualification of that counsel."  *In re Adelphia Communications Corp.*, 342 B.R. 122, 128 (S.D.N.Y. 2006).  "Due to 'the substantial cost of requiring additional trustees or counsel in cases where individual debtors have claims against each other,' courts 'have taken a "wait and see," fact-driven, approach, to determine the extent to which [additional professionals are] necessary." *Adelphia*, 342 B.R. at 128 (*quoting In re Adelphia III*, 336 B.R. at 673 (*citing Katz*, 327 F.2d at 635–36; *In re O.P.M. Leasing Serv.*, 16 B.R. at 939; and *In re Guy Apple Masonry Contractor*, 45 B.R. at166)).

In this case, at this time, there is no actual conflict of interest.  The UST states that "[s]ince there is a likelihood that there will be funds in one or both cases, a claim may be made on either estate."  This assertion appears to be wholly incorrect.  American Founders Capital, Inc. ("AFC"), is the first secured creditor for both of the Debtors. Following the auction of the Debtors' assets,

AFC is still severely undersecured by approximately $3million.  Additionally, it should be stressed that both of the Debtors are borrowers on this debt.

Moreover, even if funds existed to completely satisfy AFC, Decathalon Alpha III, LP, is the second secured creditor for both Debtors, being owed approximately another $1.2 million. Consequently, in order for any unsecured creditor to receive a distribution, there would have to be an infusion into the estate of at least another $4.2 million dollars.  Considering that all of the Debtors' assets have been sold, and the only remaining assets are the Debtors' potential Chapter 5 avoidance claims, it is unlikely that this threshold number would ever be reached.  Simply speaking, since the inception of this case to present, no funds have been or are available for distribution to unsecured creditors from the business assets.

Having said that, should the Chapter 5 avoidance claims somehow exceed this threshold, it is certainly conceivable that an actual conflict of interest could arise.  We are not, however, at that point.  The UST contends that because the Debtors may recovers additional funds, this constitutes an actual conflict warranting disqualifying counsel now.  The Court disagrees.  A potential conflict does not require disqualification.  *In re Hash*, 472 B.R. 866, 868 (Bankr. W.D. Ky. 2012) (court approved application to employ despite potential future conflict of interest).  "[I]nterests are not considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash." *In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 461 (Bankr. N.D. Ohio 2003) (*quoting In re Caldor, Inc.–NY*, 193 B.R. 165, 172 (Bankr. S.D.N.Y. 1996)); *In re Licking River Mining, LLC*, 562 B.R. 351, 357 (Bankr. E.D. Ky. 2016).  At this point, with no distributions expected past the two primary secured creditors, there is no actual conflict in existence. Consequently, there is no basis or authority for declining the Debtors' Application on the mere

possibility that a conflict may arise at some point in the future.

As stated above, the UST relied heavily upon the *WM Distribution* case. The Court would make a few notes about that case. First, the Court would point out that *WM Distribution*, the case relied upon by the UST who advocates for a bright line rule, states that a court should disqualify counsel only "if it finds the joint representation creates an actual conflict." *WM Distribution*, 571 B.R. 866, 871 (*quoting In re Interwest Bus. Equipment, Inc.*, 23 F.3d 311, 316 (10th Cir. 1994) (emphasis in original). That court did not hold that there should be a per se disqualification rule. Indeed, that case held that "[c]ounsel who also represents a creditor is disqualified from representing a debtor if there is an actual conflict of interest; potential conflicts of interest do not mandate disqualification." *In re WM Distribution, Inc.*, 571 B.R. 866, 871 (Bankr. D.N.M. 2017).

Secondly, *WM Distribution* can be easily distinguished from the case before this Court. Unlike in that case, this case is not a Chapter 11 reorganization. At best, this case is what is commonly called a "liquidating Chapter 11." There will be no plan of reorganization filed, no ballots submitted to creditors, no plan confirmation, and no reorganized debtors. This finding is supported by remarks made by counsel for the Debtors that, now that all of the assets have been sold, the Debtors are likely to convert to Chapter 7. Unlike in the *WM Distribution* case, there is no on-going reorganization where the Debtors interests may be competing against each other as the case progresses.

Another distinction between the *WM Distribution* case and the case here, is that in the *WM Distribution* case, through a proposed reorganization plan, unsecured creditors could receive some distribution. As stated above, here there is very little chance of unsecured creditors receiving any distribution. Furthermore, if some recovery to unsecured creditors could happen, it would likely

happen via Chapter 5 avoidance actions, which, if the Debtors follow through on their stated intention to convert, will be pursued by a Chapter 7 trustee, or two Chapter 7 trustees.

Finally, the most obvious distinction between the case here and the *WM Distribution* case, is the fact that in *WM Distribution* the two debtors were clearly at odds with one another, potentially due to the marital discord between the two majority owners. They were not operating to achieve a common goal, but instead were operating to obtain an advantage over each other. That is not the situation here. In this case, there is no conflict between these Debtors, and they have operated together to maximize the liquidation of assets to repay creditors. There is not an "active competition" between the interests of the Debtors, where the interest of one can only be served at the expense of the other. *Midway Motors,* 355 B.R. at 33. In other words, at this juncture of the case and under these circumstances, the interests of F&M and M&P are identical. Consequently, there is no actual conflict of interest.

## CONCLUSION

To conclude, the Court will adopt a "wait and see," fact driven approach to applications to employ. Along those lines, the Court will only disqualify professionals if an actual conflict of interest arises, as opposed to a potential conflict of interest. In this case, at this time and under these circumstances, no actual conflict of interest is present. A future potential conflict of interest does not warrant disqualification of KJAB. The Court is going to overrule the UST's objection to the Application, without prejudice to the UST raising the objection again at a future date should an actual conflict materialize. The Court is also going to charge KJAB to notify the Court if it finds that an actual conflict of interest has arisen, wherein the interests of the Debtors are no longer in line. KJAB is expressly directed to not take any action on any inter-company dispute, but should instead

notify the Court and the UST, and await a decision from the Court. At that time, the Court will determine what, if any, remedies should be put in place. A separate order will be entered approving the Application.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: April 30, 2019